Mr. Young, and you reserve five minutes for rebuttal, correct? That's correct, Your Honor. All right. May it please... Let's wait a little bit till... Sure. Okay. You may proceed, sir. May it please the Court, this is an appeal from the Trademark Trial and Appeal Board's grant of Adidas' petition to cancel the Christian Faith Fellowship Church's two registrations for its As Zero trademark. The issue presented is whether the in-state sale of two trademarked hats to an out-of-state purchaser qualifies as a use in commerce under the Lanham Act. Church asks this Court to vacate the Board's decision. The Board erroneously interpreted use in commerce under the Lanham Act. The Lanham Act defines commerce as all commerce which may lawfully be regulated by Congress. Does the Lanham Act contain a de minimis provision with respect to use? No, it does not. But yet that's what the Board found.  That's correct, Your Honor. For more than 50 years, the Supreme Court has recognized that sales made to individuals traveling across state lines is commerce which Congress may regulate. And it has consistently held that there is no de minimis or trivial exception. Any sale to an out-of-state purchaser is commerce which Congress may regulate. What about the provision substantially affect the commerce? I'm sorry? What about the provision in the Lanham Act that speaks to substantially affect? There is no provision in the Lanham Act that talks about that a sale has to substantially affect commerce. The Lanham Act says that commerce is all commerce which Congress may regulate. And the Supreme Court has consistently held that that means all commerce. And there is no trivial or de minimis exception. Thus, the Lanham Act extends to all trademarks that are used in commerce, even where they are the subject of only a single sale. The Supreme Court in Gonzales v. Wright held that where a class of activity affects commerce such that it may be regulated by Congress, individual instances within that class are likewise within Congress's commerce clause power. Even instances that may be trivial or de minimis. And there is no requirement that the instances, the individual instances by themselves be shown to have any effect on commerce. Does it make any difference that this case involves trade in goods as opposed to trade in services? No. Absolutely not. And this court or its predecessor was very clear about that in the Salinas-Wines case. That the law is the same whether it's goods or services. Here Congress sought to give use in commerce the broadest meaning possible in order to make commerce possible. And because the U.S. Supreme Court and this court have recognized that sales made to individuals traveling across state lines affect commerce and may be regulated by Congress, any sale of a trademark product to an individual traveling across state lines is a use in commerce entitling that trademark to federal registration. Is there any requirement to show that the purchaser travels interstate lines? No. There's only a requirement that it be in commerce and sales to individuals who are out of state has been deemed by the U.S. Supreme Court to be sales in commerce. There's no evidence that the person's from out of state. It's just an intra, the only evidence is an intrastate sale. Well, there would have to be evidence that the purchaser is from out of state is not a resident of the state in which the sale occurred. So if there's no evidence, for example, in this case, if there's no evidence and the evidence is a single check, if there's no evidence of any type of interstate travel, then you would lose. If there's no evidence that Charlotte Howard is an out of state resident, then yeah, we've got a problem. Yep. I would agree. Thank you. So this court in Larry Harmon Pictures recognized that there is no minimum threshold for application of the Lanham Act, that any sale of a trademarked product to an individual traveling across state lines is a use in commerce, and that that entitles the trademark to federal registration. Accordingly, Your Honor, the church asks this court to vacate the board's decision and to remand for consideration of Adita's other arguments. Now, before you sit down, why don't you address the evidentiary issue here, the hearsay evidence of the check? Sure. So the evidence here that Charlotte Howard is a resident of Wisconsin is a check that Charlotte Howard wrote to the church on February 23, 2005, for the purchase of two hats. It's a pre-printed check, and it shows her address as being in Wisconsin. The check is self-authenticating because it's commercial paper and under rule of evidence 9029, it's self-authenticating. The check was retained. Does that rule require that the business, the custodian of the evidence, the custodian of the commercial paper be the maker of the commercial paper? No. Any commercial paper is self-authenticating under 9029. The second question is the hearsay issue, and that touches on your question, which is that the contents of the check are alleged by Adita's to be hearsay. Under rule of evidence 8036, it is a business record of the church, and it does not have to have been created by the church. The church doesn't have to have seen it be created. The requirement under 8036 is that the check have been retained in the records of the church and relied on by the church. You're relying on the air land forwarders decision to support that? That's correct. An air land forwarder says specifically that the church doesn't have to have made the record, doesn't have to have seen the record being made, as long as it is in the records of the church, then it qualifies as a business record under 8036. Okay. Thank you. You reserved more than your five minutes of time. We appreciate that. Thank you. Counselor Zachariah. Yes, sir. Good morning, your honors. May it please the court. My name is John Zachariah. I'm here for the appellee Aditas AJ. I would like to present three points this morning as to why this court should affirm the board's ruling. Number one, substantial evidence in this case supports the factual findings of the board. Number two, the board applied the correct legal standard. The board did not apply some de minimis standard. Where does the de minimis or the quantity, where does that requirement come from given cases like Gonzales and the fact that the Lanham Act doesn't have a de minimis exception in it? Your honor, I think the de minimis is really a red herring. The board, when you look at the decision, the board's decision when it refers to de minimis, it refers to a de minimis sale, and then it says, and under the circumstances. The board looked at the totality of the evidence to come to its decision, and the totality of the evidence was there was one sale that was made solely in Illinois. It was solely intrastate. You say it's intrastate. Even though it crossed state lines, you're saying it's intrastate. Correct. There's no law of state case that I'm aware of that the fact that a consumer, let's assume this consumer or this person, Howard, crossed state lines, which we're not conceding. Let's assume that's the case. She crossed state lines, and she purchased these two hats. That's not use of the mark in commerce. Why not? Because under the law, your honor, the statute specifically requires that there be a sale or transport of branded product in commerce. So if it were shipped, you would have a different outcome in this case, according to the law? Yes, your honor. Yes. But the law requires it. Traditionally, the courts and the board- Once the transport has to be made by the owner of the trademark, has to be made by the owner of the trademark. And that's clear. That's clear under Salinas. Salinas says the use in commerce has to be made by the owner of the trademark. That's still the- It's clear from what? What was that? Salinas. The Salinas case. The Salinas case states- But even if that's the case, it's still sold to an out-of-state customer. That's not sufficient, your honor, to show use of the mark in commerce. But that's the interpretation of the Commerce Clause in every other area of jurisprudence, that if the business deals with interstate travelers, that's in commerce. Your honor, I respectfully disagree. The Lanham Act specifically requires that- I'm not talking about the Lanham Act. I don't think the Lanham Act has any distinction between the scope, the regular scope of the Commerce Clause. It specifically says that it extends to the full extent of Congress's power, which is the Commerce Clause. That's right, your honor. But you have to understand that the use in commerce, commerce means commerce that's regulated by Congress. Okay? Which is interstate commerce. So, but the Salinas says- What is interstate commerce defined as? Interstate commerce can mean commerce between states. That's interstate commerce. Foreign commerce is commerce between countries. Now, I agree. The Salinas has loosened the requirement of use in commerce for trademarks. Salinas says that an interstate sale can support a federal registration if it is shown that interstate sale had an effect on interstate commerce. The board applied the correct law here, the correct standard. Did that interstate sale, that one sale of two hats to a consumer, did that one sale affect interstate commerce? And they said, and the board said no, because it was de minimis. The board said no, your honor, because it was a de minimis sale, and also it was in a- So it's saying that one sale is not enough. How many do you have to have? Yeah, I don't think, I think the quantity, as long as you show there's an effect in interstate commerce, the quantity is really, again- If a sale is made in interstate commerce, it has an effect on interstate commerce. But the sale was not made in interstate commerce, your honor, because there was no evidence of record showing that that one sale had any effect on interstate commerce. It's not automatic use in commerce. Do you concede that the check shows that the purchaser was living in another state? I mean, it's not proof, but the check indicates an address from another state. Your honor, I concede that the check shows- In this case, it seems to me, I recall from the record that the church, the congregation is made up of residents from the two different states. Your honor, the record shows, does not show how many residents were in Wisconsin at the time that the application was filed. These applications were filed in 2005. There's some evidence in the record that says that the appellant did some demographic in in Wisconsin, but that doesn't tell me that, that doesn't say that there were 200 residents that were members of the church in 2005. There was no evidence of record indicating how many residents lived in Wisconsin at the time that these applications were filed, and that's an important distinction. What facts existed at the time that these applications were filed to show that that interstate sale, that one interstate sale had an effect on interstate commerce? The latest is clear. I want to ask you about something which you just said. You suggested that we should be just looking at the individual instance, and when courts look at all commerce, or whether Congress can regulate certain interstate commerce in some of these cases, like Gonzales and Wickard, they talk about how there might be one instance or the particular instance in which they're looking at in that case might be small, but when they look at all the uses in the aggregate, this is an area which Congress can regulate. Are you suggesting that in this case, you take a different approach to the standard that we should be applying in determining whether Congress could regulate this as interstate commerce? In other words, do we just look at the one individual instance, or do we review it in  Hypothetically, if I understand your question, I think this class of activity that Gonzales refers to and Wickard refers to, there's nothing in the record that says, what is the class of activity here? We're only talking about one sale of hats. Under the Wickard standard, the one sale to an out-of-state customer would qualify. Wickard didn't even require a sale or out-of-state activity, but certainly under Wickard, one sale to an out-of-state customer would be interstate commerce. Maybe under the Wickard case dealt with a regulatory statute, did not talk... This is your problem. You're trying to argue that there's a different standard for interstate commerce under the Lanham Act versus the rest of the Commerce Clause cases, but the statute specifically disagrees with you. I respectfully disagree with that, Your Honor. The Lanham Act requires that there be use in interstate... Commerce is all commerce which lawfully may be regulated by Congress. And Congress... Congress can regulate interstate commerce. The Lanham Act regulates all interstate commerce. The sale to a person that crosses state lines, so let's assume, again, this Howard was in Wisconsin. But then this issue you're raising, wasn't it addressed in Larry Harmon? We said that the Lanham Act's use in commerce, that that requirement is intended to encompass the entire scope of congressional power under the Commerce Clause. And we went on and we declined to adopt any minimum or non-statutory criteria as to the amount of activity that's necessary in order to constitute use in commerce. Correct, Your Honor, but there has to be a showing of a direct effect... Well, just one. Just maybe one case, and some other case law shows that if you've got one sale, then when you consider that sale in aggregate throughout America, then you have a substantial effect. But it's just one sale, Your Honor. There weren't multiple sales. It's one sale, that effect, that was allegedly made before these applications were filed. And there's been no showing that that one sale had any effect. The fact that there was one sale, that doesn't per se mean that there was an effect on interstate commerce. What the appellant wants to do here is basically... The statute says all commerce which may be lawfully regulated by Congress, right? Right. When we're just looking at cases like Wickard and Gonzales, I'm not sure that your one sale argument makes sense. Well, Your Honor... The Commerce Clause doesn't apply differently depending on the facts of each individual case and how many sales. The Lanham Act regulates all interstate commerce, right? And so interstate commerce, as defined by all these cases, can include, because it may, in the aggregate, under all kinds of transactions, involve just one sale. Your Honor, I... The Lanham Act, because you may have a bunch of different trademark holders that only make one sale outside of it, but in the aggregate, that has some kind of impact on interstate commerce. So Congress can regulate one sale to an interstate traveler. Isn't that right? I think you have to look at the totality of this. In this case here, that one sale... I'm not talking about the specific facts of this case. Congress can, even if there was proof that there's a bunch of these companies that only make incidental sales or one sale out of state, or it's just by chance that some out-of-state traveler... They could still regulate that activity, whether it's for trademark, if they wanted to act a federal sales tax, any number of statutes. They don't have to show substantial numbers of interstate travelers or the like to regulate that activity. They just have to show that there might be one interstate sale. Is that a correct view of the law? They have to show more than just there was one sale. They have to show that there was an effect on interstate commerce by that one sale. Well, one sale could affect interstate commerce. The board's saying that... You kind of want us to find some numerical requirement or percentage of sales, and that's what the board did here. They said de minimis, and I just don't see where they got that. Your Honor, again, I'm not putting a... The board, in my estimation, did not put some numerical standard. Well, they said de minimis. That means compared to something else. You can't find that something is de minimis unless you're making a... You have a universe, a numerical universe of some kind, and you're saying that this particular set or element of that universe is de minimis. They said more than that, Your Honor. They said it was a de minimis sale, and under the other circumstances. The other circumstances were, again, it was one sale in a local bookstore in Illinois. This bookstore was open two hours a week. It was just that the amount of the sale was minimal, so it was more than just... It was just they didn't put a quantified numerical test on whether or not there was an effect  They looked at all the factors. Assume that we were to reverse on the question dealing with the interstate commerce. What else would there be left to do? Do we have to remand to resolve any other issues? There were three claims that were brought at trial. This non-use claim was one of the three claims, so there was also an abandonment claim, and it was a claim that the alleged marks were ornamental and did not function as trademarks. There would be two additional claims that would be addressed by the board. The board never got to the abandonment claim? Correct, Your Honor. I want to go back to your argument about shipping would make a difference. Had the church shipped the two hats, the outcome would be different. How can that be under Larry Harmon, for example, where it didn't involve... near the border, near the state border, and nothing crossed state lines, but yet that was found to be used in commerce, or services in commerce? Your Honor, there, Harmon found that they were, although the court there said that there was no threshold, there was much more evidence to show that there was an effect on interstate commerce. I believe the court there said that there was 15% of customers that went to, I think it was the Bozo's restaurant. It was just quantity. But there were additional facts, Your Honor. There were also publications that were published in other states, publicizing the Bozo's restaurant. So there were other factors that the court also relied on to show that there was a direct effect on interstate commerce, which are missing... That's just additional evidence. Congress does this in all kinds of statutes. I mean, it can regulate a restaurant that may only serve one out-of-state customer in its entire history, but they still have to abide with all the civil rights laws. They still have to abide by all the other federal statutes that were passed under the Commerce Clause, even if they only have ever had one customer. Frankly, they don't even have to have one out-of-state customer. They just have to show that they engage in some kind of commerce that may affect it. It's really broad. It is broad, but I don't think it's broad enough to basically change the law, which means that... I think the PTO is the one that is trying to change the law. The law says that interstate commerce is commerce that's regulated by Congress. So then you need to look to see what is use in commerce. Use in commerce is when, for goods, is when the goods, branded goods... See, the problem is, I think you're trying to conflate the facts of this case with the definition of interstate commerce, but you have to concede that interstate commerce involves any incidents where somebody from out-of-state travels out-of-state and purchases a good. And then you look at the facts of this case, and that's... I mean, I know you have your evidentiary objections, but that's not really disputed here if we don't agree with you on that. So I don't see how you get anywhere. If this person was solely in-state and bought this good solely at her church, bookstore, or whatever, didn't go out-of-state, then you might have a better case. Let's take it that evidence is undisputed. There's no dispute. She's an out-of-state customer. Ron, there's no case that I'm aware of which is held that simply just a sale to an out-of-state customer is sufficient to support a federal trademark registration. Not one case. These cases, the... But you're saying that... Because we're in an odd position where you're arguing that the TTAP hasn't taken up as much authority as the statute has given it, I think. If the TTAP had said, this is interstate commerce, would you be arguing that that's an improper definition of interstate commerce under the Supreme Court case law? No, I would be, because it really... In what case would you cite that one sale to an interstate customer is not sufficient for the reach of Congress's powers under the Commerce Clause? Do you want to... It has to be evidencery showing that there was a direct effect on interstate commerce. And I... No, no, no. But see, again, you're getting back into conflating the facts in the specific case with the reach of Congress's regulation. So could Congress have told the TTAP, you have power to regulate one sale to an out-of-state customer. Does Congress have that authority? Yes. I don't believe it's done that here. I think what the appellant wants to do here is basically say that any interstate sale, regardless if it's an out-of-state customer or an interstate customer, would be used in commerce is what they want to do. And that's not the statute, Your Honor. The statute specifically requires that there be use in commerce or it could be an interstate sale that has an effect on interstate commerce. And the boards clearly said they didn't apply a diminutive standard. They applied... They stated that under the evidence, substantial evidence, there was no factual showings made that there was any effect on interstate commerce. Okay. I think we understand that part. Okay. With respect to the check, Your Honor, so... You're out of time, but I'll let you address that since I asked the question to your opponent. Okay. So with respect to the check, so yeah, the check possibly could be considered a business record to show that there was actually a transaction made. But I think it was error by the board to admit the check as proof that this person lived in Wisconsin. We don't know who drew the check. There was no testimony indicating who drew the check. There was no testimony by the appellant's witness who indicated that it was actually Charlotte Howard who drew the check. How do we know whether or not the person who drew the check... Maybe she did live in Wisconsin, but maybe those were old checks. There's nothing of... Was the signature on the check Charlotte's signature? I'm assuming it is, Your Honor. But that could be an old check. There's nothing of record to substantiate to show that that was actually this person's current address. Anything else? That's it, Your Honor. Okay. Thank you. Just a couple of points. Gonzales versus Reich makes it absolutely clear that the church was not required to have any effect on interstate commerce. In addition to Gonzales, we've got Perez, even Wickard, where the Supreme Court has said you can't excise as trivial individual instances that fall within a class of activity. Clearly, sale to an out-of-state resident is commerce that Congress can regulate. Because the sale of these two caps to Charlotte Howard was a sale to an out-of-state resident, it was a sale in commerce and falls within the Lanham Act and therefore qualifies the trademark for federal registration. There was no requirement to prove what effect that sale to Charlotte Howard had on interstate commerce. As to the check and the admission of the check, this is an abuse of discretion standard. A very high standard. Certainly, the check itself is substantial evidence on which the Board could have found and did find that Charlotte Howard was an out-of-state resident. If there aren't any other questions, I did have one administrative matter. We inadvertently omitted the case site on page 12 of our opening brief for a block site. Should have been cited to Gonzales versus Reich, 545 U.S. 1 at pages 17 and 20. We apologize for that. We appreciate that. Okay. Thank you very much. Thank you very much, sir. That concludes today's arguments. This court remains in recess.